IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY EKSTROM, *et al.*,

   *Plaintiffs*,

   v.

                                 Civil Action No. ELH-20-1501

CONGRESSIONAL BANK,
SUCCESSOR-BY-MERGER TO
AMERICAN BANK

   *Defendant*.

**MEMORANDUM OPINION**

This putative class action concerns an alleged kickback scheme between American Bank ("American" or "American Bank") and All Star Title, Inc. ("All Star"), a Maryland based title and settlement services company. Plaintiffs Timothy Ekstrom and Davida Carnahan, who are mortgagors, have sued Congressional Bank ("Congressional"), American Bank's successor-by-merger in a suit consisting of more than 50 pages with 24 exhibits. ECF 1 (the "Complaint"). Plaintiffs allege that the kickback scheme violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

Congressional moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). ECF 14. It argued that plaintiffs' claims are time-barred because the alleged violations occurred in 2010 and plaintiffs did not set forth facts sufficient to toll the statute of limitations under a theory of fraudulent concealment. ECF 14-1 at 7-18. Further, defendant urged dismissal of plaintiffs' RICO claim, arguing that plaintiffs did not allege a RICO enterprise, a pattern of racketeering, or a proximate injury. *Id.* at 18-30.

By Memorandum Opinion (ECF 19) and Order (ECF 20) of November 9, 2020, I denied defendant's motion to dismiss. I determined that defendant was not entitled to dismissal based on limitations because plaintiffs set forth sufficient allegations of fraudulent concealment and equitable tolling.  In addition, I concluded that plaintiffs adequately stated a RICO claim.

Thereafter, Congressional filed a "Motion to Certify Discretionary Appeal and to Stay Litigation," pursuant to 28 U.S.C. § 1292(b).   ECF 22. The motion is supported by a memorandum of law. ECF 22-1 (collectively, the "Motion"). In seeking an interlocutory appeal, Congressional argues that there are "four controlling questions of law" at issue, for which "there is substantial ground for difference of opinion . . . ."  ECF 22-1 at 4.  In its view, "an immediate appeal may materially advance the ultimate termination of this litigation."  *Id.* at 4-5.  Plaintiffs oppose the Motion. ECF 23. Defendant has replied. ECF 24.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I.  LEGAL STANDARD

Under 28 U.S.C. § 1291, the federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."   Interlocutory appeals, governed by 28 U.S.C. § 1292, are an exception to the grant of jurisdiction to appellate courts to hear appeals only from "final decisions" of district courts.  *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *see Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013).

Section 1292 of 28 U.S.C., titled "Interlocutory Decisions," provides, in part:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such

- 2 -

action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

In *Johnson*, 515 U.S. at 309, the Supreme Court explained the rationale for circumscribing the availability of interlocutory appeals:

An interlocutory appeal can make it more difficult for trial judges to do their basic job—supervising trial proceedings.  It can threaten those proceedings with delay, adding costs and diminishing coherence.  It also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary.

"A party seeking review of a nonfinal order must first obtain the consent of the trial judge."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978); *see Boyd v. Coventry Health Care Inc.*, 828 F. Supp. 2d 809, 820 (D. Md. 2011).  As reflected in 28 U.S.C. § 1292(b), a trial judge may certify an interlocutory order for appeal if the party seeking the appeal shows that (1) the desired appeal "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The party moving for certification of an interlocutory order "bears the burden of proving that the prospective appeal satisfies each of the statutory prerequisites for certification."  *Boyd*, 828 F. Supp. 2d at 820. "Failing to meet even one of the statutory requirements will defeat a litigant's request for an interlocutory appeal." *District of Columbia v. Trump*, 344 F. Supp. 3d 828, 833 (D. Md. 2018); *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) ("Unless all of the statutory criteria are satisfied… 'the district court may not and should not certify its order…under section 1292(b).'") (internal citation omitted).

Notably, an "interlocutory appeal under § 1292(b) is the exception, not the rule." *Coal.*

*For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, No.

CCB–06–2773, 2015 WL 4040425, at \*2 (D. Md. June 29, 2015). Accordingly, certification

under § 1292(b) is granted "sparingly" and the statute's requirements must be "strictly

construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th

Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)); *see James v. Jacobson*,

6 F.3d 233, 237 (4th Cir. 1993) (Piecemeal interlocutory appeals should be "avoided" because

review of non-final judgments is "effectively and more efficiently reviewed together in one

appeal" at the end of litigation.); *Clark v. Bank of America, N.A.*, SAG-18-3672, 2020 WL

3868990, at \*2 (D. Md. July 9, 2020) ("Interlocutory appeal should not be sought to provide

early review of difficult rulings in hard cases."). And, as the Fourth Circuit recently emphasized,

district courts have considerable discretion to determine whether the § 1292(b) criteria are met.

*In re Trump*, 958 F.3d 274, 283 (4th Cir. 2020) (en banc), *petition for cert. filed*, No. 20-331

(U.S. Sept. 14, 2020) (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 46 (1995)).

The first element, a controlling question of law, is defined by the Fourth Circuit as a

"pure question of law," that is, "an abstract legal issue that the court of appeals can decide

quickly and cleanly." *Agape Senior Cmty, Inc.*, 848 F.3d at 340 (quoting *Mamani v. Berzain*, 825

F.3d 1304, 1312 (11th Cir. 2016)). A pure question of law does not require the appellate court

"to delve beyond the surface of the record in order to determine the facts." *Agape Senior Cmty,*

*Inc.*, 848 F.3d at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir.

2004)). In contrast, a question is not a controlling question of law where the appellate court is

asked to consider "whether the district court properly applied settled law to the facts or evidence

of a particular case." *Agape Senior Cmty, Inc.,* 848 F.3d at 341 (quoting *McFarlin*, 381 F.3d at

1259); *see also International Refugee Assistance Project ("IRAP") v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019).

For purposes of the second element of § 1292(b), courts find substantial grounds for difference of opinion "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)*; see also Bush v. Adams*, 629 F. Supp. 2d 468, 478 (E.D. Pa. 2009) (stating that this element is met "when there is genuine doubt or conflicting precedent as to the correct legal standard applied in the orders at issue").

However, the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient." *Lynn*, 953 F. Supp. 2d at 624 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Moreover, lack of unanimity among courts and lack of relevant authority do not suffice. *See Union County v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th Cir. 2008); *North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D.N.C. 1995). Similarly, "a party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds." *IRAP*, 404 F. Supp. 3d at 950. In addition, "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633 (citing *Bush v. Adams*, 629 F. Supp. 2d 468, 475 (E.D. Pa. 2009)).

Of import here, "[t]he threshold for establishing the substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19–20 (D.D.C. 2002).  "In other words, for interlocutory appeals, 'it matters not whether the

lower court simply got the law wrong,' but 'whether courts themselves disagree as to what the law is.'" *In re Nichols*, TDC-14-0625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014) (quoting *KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*, 250 B.R. 74, 82 (E.D. Va. 2000)) .

Finally, under the material-advancement prong, certification of an interlocutory appeal is appropriate only "in exceptional situations in which doing so would avoid protracted and expensive litigation." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. Apr. 26, 1989) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)); s*ee Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (holding that an interlocutory appeal would materially advance resolution of litigation where reversal by the appellate court would dismiss one defendant and resolve multiple claims against all defendants, even though it would not resolve the entire case). In deciding whether certification will materially advance the ultimate termination of the litigation, "'a district court should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *Goodman v. Archbishop Curley High School, Inc.*, 195 F. Supp. 3d 767, 773 (D. Md. 2016) (quoting *Coal. For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, No. CCB–06–2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015)).

## II. DISCUSSION

Congressional requests certification of the Court's Order of November 9, 2020 (ECF 20), denying its motion to dismiss. Defendant avers that the Order implicates "four controlling questions of law as to which there is substantial ground for difference of opinion and with respect to which an immediate appeal may materially advance the ultimate termination of this litigation." ECF 22-1 at 2. Specifically, Congressional requests certification of the following:  (1)

whether the plaintiffs' conceded knowledge of the allegedly excessive price precludes them from relying on fraudulent concealment tolling; (2) whether nondisclosure of a kickback scheme constitutes fraudulent concealment if there is no independent legal duty to disclose; (3) if plaintiffs' alleged bilateral conspiracy constitutes a RICO enterprise; and (4) whether plaintiffs alleged a causal relationship between the fraudulent scheme and plaintiffs' damages. *Id.* at 2. And, defendant argues that it only needs to demonstrate that a substantial ground for difference of opinion exists as to one of these issues, because they are all controlling questions of law that will materially advance the ultimate termination of the litigation. ECF 24 at 6.

In opposing defendant's Motion, plaintiffs contend that, as to the four issues, none satisfies all three prongs of § 1292(b). I agree.

In my view, all four issues satisfy the material advancement prong of § 1292(b) because reversal by the Fourth Circuit on any one of the issues would resolve at least one or both of plaintiffs' claims. *See Goodman*, 195 F. Supp. 3d at 773; *Reese*, 643 F.3d at 688. And, because the case is still in an early phase of litigation and substantive discovery has not yet occurred, an immediate appeal would materially advance the termination of litigation. *See, e.g., UnitedHealth Grp. Inc. v. MacElree Harvey, Ltd.*, No. 16-1026, 2016 WL 5239675, at *3 (E.D. Pa. Sept. 21, 2016) (holding that immediate appeal would materially advance termination of the litigation because the case was "early in its life-cycle" and "[s]ubstantial discovery ha[d] not yet occurred"); *Katz v. Live Nation, Inc.*, No. 09-3740, 2010 WL 3522792, at *3 (D.N.J. Sept. 2, 2010) ("Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set.").

However, as discussed, *infra*, defendant has not satisfied the remaining prongs of § 1292(b) or demonstrated that there are "exceptional circumstances" that "justify a departure from

the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475. I shall address each issue, in turn.

## A.  LIMITATIONS

As noted, defendant raises two issues in relation to limitations and tolling based on fraudulent concealment.  In its view, these are controlling questions of law with substantial grounds for a difference of opinion.

As to the first issue, Congressional avers that the question of whether plaintiffs' knowledge of the allegedly excessive price for settlement services placed them on inquiry notice of the kickback scheme is a controlling question of law that involves substantial ground for difference of opinion as a result of two recent Fourth Circuit rulings—*Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 256 (4th Cir. 2020), and *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019). ECF 22-1 at 5-6. According to Congressional, *Edmonson* does not address whether "knowledge of an obviously excessive price precludes tolling." 922 F.3d at 6. Therefore, "this is an issue of first impression where both sides base their arguments on first principles." ECF 24 at 6. Further, defendant contends that *Baehr* precludes plaintiffs from alleging an injury aside from the allegedly excessive price because such injuries do not establish Article III standing. ECF 22-1 at 6.

In the Memorandum Opinion, I addressed the argument that Congressional raises here with respect to *Edmonson*. *See* ECF 19 at 27. I agreed with defendant that *Edmonson* did not specifically consider whether plaintiffs' knowledge of an excessive price affected the availability of fraudulent concealment tolling. *Id.* But, I explained that the relevant question in *Edmonson*, as here, was whether the defendant concealed the facts of the allegedly fraudulent scheme, not just the excessive price that resulted from the scheme. *Id.* Because defendant does not provide any

additional case law to place the Court's analysis of *Edmonson* in doubt, I cannot conclude that *Edmonson* creates substantial ground for difference of opinion.

Moreover, as noted, the fact that this question may be one of first impression "standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d at 284; *see also District of Columbia*, 344 F. Supp. 3d at 837 ("[I]nsofar as a question may arise for the first time, it has been held that while district courts may consider novelty as a determinative factor in certifying an order, they should do so only *where the other statutory requirements for certification are already met* and where the 'matter of first impression also ha[s] other grounds for difference of opinion.'") (quoting *Lynn*, 953 F. Supp. 2d at 624); *see also Couch*, 611 F.3d at 634 ("Nor does the fact that no California court has addressed the precise questions at issue satisfy the requirement of a substantial ground for disagreement."); *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994) ("substantial ground for difference of opinion does not exist merely because there is a dearth of cases").

In addition, Congressional misconstrues the holding in *Baehr*, 953 F.3d 244, to support its contention that there is a substantial ground for difference of opinion on this question. According to defendant, *Baehr* precludes the Court from providing a remedy for any injuries alleged by plaintiffs other than the injury of paying an allegedly excessive price. ECF 22-1 at 6.

In *Baehr*, the plaintiffs claimed that they were harmed solely by being deprived of "impartial and fair competition between settlement services providers," but were not overcharged for settlement services. 953 F.3d at 254. The Fourth Circuit concluded that "the deprivation of impartial and fair competition between settlement services providers—untethered from any evidence that the deprivation thereof increased settlement costs—is not a concrete injury under RESPA." *Id*.

Unlike the homeowners in *Baehr*, plaintiffs have alleged a violation that is connected to the real world impact of paying increased prices for settlement services. Therefore, the *Baehr* Court's holding does not preclude standing with respect to the injuries as alleged by plaintiffs. *See, e.g.*, *Bezek v. First Mariner Bank*, SAG-17-2902, 2020 WL 5877159, at *8–11 (D. Md. Oct. 2, 2020) (finding *Baehr* satisfied in case involving allegations similar to those alleged in this case); *Edmondson v. Eagle Nat'l Bank*, No. SAG-16-3938, 336 F.R.D. 108, at 111-113 (D. Md. 2020). Thus, *Baehr* does not create a substantial ground for difference of opinion.

Defendant's argument with respect to the second limitations issue suffers from similar flaws. Congressional asserts that the question of whether "mere nondisclosure of an alleged kickback scheme constitutes fraudulent concealment" is a controlling question of law.  ECF 22-1 at 7. And, it cites *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987), to support its claim that there are substantial grounds for a difference of opinion. ECF 22-1 at 7. Defendant posits that, in *Pocahontas Supreme Coal*, the Fourth Circuit held that a "defendant's 'failure' to admit to wrongdoing in response to any inquiry from the Plaintiff was not 'concealment' that would toll the limitations period." ECF 24 at 7. Therefore, according to Congressional, "in this case, the Fourth Circuit could reasonably conclude that American's 'failure' to disclose the grounds for Plaintiffs' claims where Plaintiffs did not even make such a request is also not concealment." *Id.*

As defendant notes, *Pocahontas Supreme Coal* suggests that a defendant's failure to confess unlawful conduct may not constitute fraudulent concealment that would toll the limitations period. *See* ECF 22-1 at 7. There, a contract mining company inquired of National Mines Corporation why National Mines refused to accept certain coal deliveries and why the price paid for delivered coal was so low. *Pocahontas Supreme Coal*, 828 F.2d at 218-19. Instead

of admitting that the price resulted from illegal antitrust activity, National Mines averred that the delivery quotas were the result of a strike and that the price was the maximum allowable. *Id.* at 218. This was the only claim of concealment that the plaintiffs made. The Court concluded: "To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations in these cases. It can hardly be imagined that illegal activities would ever be so gratuitously revealed." *Id.* at 218-19.

However, as plaintiffs argue, the facts of *Pocahontas Supreme Coal* are readily distinguishable from the facts of this case. As I noted in the Memorandum Opinion, plaintiffs do not allege that American merely failed to disclose the kickback scheme voluntarily, after a single inquiry. ECF 19 at 27. Rather, plaintiffs allege that American made a series of false representations and omissions in their disclosures to lenders, including HUD-1 settlement statements, laundered money through third marketing companies, and used sham invoices to conceal the kickbacks. *Id.* (citing ECF 1 at 31-38). These acts are in stark contrast to the one act of concealment alleged in *Pocahontas Supreme Coal*. And, the alleged acts amounted to independent acts of concealment sufficient to set forth a basis for equitable tolling. ECF 19 at 29. Therefore, the suggestion from *Pocahontas Supreme Coal* that silence or nondisclosure are insufficient to plead fraudulent concealment is immaterial here and does not create a substantial ground for difference of opinion.

It appears that defendant cites to just one case with a holding that directly conflicts with part of the Court's holding in this case. ECF 22-1 at 8 (citing *Moll v. U.S. Life Title Insurance Company of New York*, 700 F. Supp. 1284 (S.D.N.Y. 1988)). In *Moll*, 700 F. Supp. at 1292-93, the district court rejected the argument that transmission of misleading HUD-1 forms constitute

independent acts of concealment. In particular, the court concluded that transmission of the forms did not constitute concealment because the amounts listed on certain HUD forms were accurate to the extent that they were the amounts that plaintiffs had actually paid for settlement services. *Id.*

However, the ruling in *Moll* is not controlling here. And, as noted, "[t]he presence of other district courts' disagreement with this Court's analysis…does not necessarily constitute substantial grounds for disagreement." *IRAP*, 404 F. Supp. 3d at 952 (citing *Couch*, 611 F.3d at 633; *State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D. N.C. 1995)).

Further, the ruling in *Moll* was called into question by the Third Circuit in *In re Community Bank of N. Va. Mortg. Lending Practices Lit.*, 795 F.3d 380 (3d Cir. 2015). The Third Circuit concluded that there was a "gap in the logic" of the *Moll* Court's reasoning, stating, *id.* at 403: "Even assuming that a HUD–1 correctly summarizes the fees and charges actually paid by a borrower for settlement services in connection with a federally related mortgage loan, it does not follow that the HUD–1 should be viewed in isolation. Federal regulations associated with that form control the nature and quality of information that is supposed to be included in each HUD–1, and borrowers should be able to rely on that information in fact being of the requisite nature and quality." Therefore, the fact that the HUD-1 forms accurately list the amounts charged and collected is not dispositive.

And, as noted in my Memorandum Opinion, numerous judges in this district have also found fraudulent concealment based on facts similar to those alleged in the Complaint. *See, e.g., Kadow v. First Federal Bank*, PWG-19-0566, 2020 WL 5230560, at *5 (D. Md. Sept. 2, 2020) (finding plaintiffs met their burden to allege fraudulent concealment by alleging defendant used

third party marketing companies and sham invoices, and failed to report the payments on plaintiffs' HUD-1 statements); *Walls v. Sierra Pacific Mortgage Company, Inc.*, GLR-19-595, 2020 WL 1528626, at *3 (D. Md. Mar. 31, 2020) (finding plaintiffs sufficiently pled fraudulent concealment based on factual averments about alleged kickback payments and use of falsified loan documents); *Somerville v. West Town Bank & Trust*, PJM-19-0490, 2019 WL 6131288, at *2 (D. Md. Nov. 19, 2019) (noting that allegations of kickback payments "are in-of-themselves evidence of the type of trickery that amounts to fraudulent concealment."); *Fangman v. Genuine Title, LLC*, RDB-14-0081, 2016 WL 6600509, at *6 (D. Md. Nov. 8, 2016) (finding fraudulent concealment where HUD-1 statements omitted any evidence of kickback arrangement even if statement accurately stated the charges that plaintiffs had paid).

Under these circumstances, defendant has not shown that there is a controlling question of law as to which there is substantial ground for difference of opinion. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 31 (D.D.C. 2002) ("[D]efendants' conviction of the correctness of their position is insufficient to carry them over the high threshold posed by the standard governing certification for interlocutory appeal.").

## B. RICO

Defendant also contends that there are two questions of law with respect to plaintiffs' RICO claim that are subject to interlocutory appeal.  In my view, defendant fails to establish that either of these issues involves a controlling question of law or substantial grounds for difference of opinion.

First, defendant requests certification on the question of whether plaintiffs' alleged bilateral conspiracy constitutes a RICO enterprise. ECF 22-1 at 9-10. Defendant avers that Judge

Grimm's holding in *Kadow*, 2020 WL 5230560, "plainly shows that there are substantial grounds for difference of opinion." ECF 22-1 at 9-10.

But, defendant has failed to introduce any legal authority that was not previously considered by the Court. In the Memorandum Opinion, I specifically addressed Judge Grimm's holding in *Kadow* and distinguished the allegations in *Kadow* from those in this case. *See* ECF 19 at 37. In doing so, I noted that the plaintiffs in *Kadow* alleged a rimless hub and spoke conspiracy that could not constitute a RICO enterprise. *Id.* In contrast, I found that the Complaint in this case alleged a bilateral conspiracy that could constitute an enterprise for the purpose of asserting a RICO claim. *Id.* at 37-38.

As defendant points out, Judge Grimm also held that the *Kadow* plaintiffs' RICO claim would have failed even if the complaint had alleged a bilateral conspiracy rather than a conspiracy of the hub and spoke variety. ECF 24 at 8 (citing *Kadow*, 2020 WL 5230560, at *11). However, because the plaintiffs in *Kadow* did not explicitly allege a bilateral conspiracy in the complaint, Judge Grimm's observation was merely dicta.

Notably, defendant does not indicate that there is a disagreement among circuits on this issue. *See Couch*, 611 F.3d at 633; *APCC Servs. v. ESH AT&T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003) ("A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits."). And, even if Judge Grimm's decision in *Kadow* conflicts with this Court's ruling, a conflict in district court decisions does not constitute substantial grounds for disagreement or necessitate an interlocutory appeal. *See Couch*, 611 F.3d at 633 ("That settled law might be applied differently does not establish a substantial ground for difference of opinion."); *W.R. Peele, Sr. Tr.*, 889 F.

Supp. at 852. Therefore, defendant does not establish that there is a substantial ground for difference of opinion as to whether plaintiffs alleged a RICO enterprise.

As to the second RICO issue, defendant asserts: "The question of whether Plaintiffs plausibly allege that a RICO violation proximately caused their injuries is dispositive of their RICO claims, and there are substantial grounds for difference of opinion." ECF 22-1 at 10. Congressional contends that the holding of *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639, 648-49 (2008), on which the Memorandum Opinion relied, is a "red herring." ECF 22-1 at 11. And, it argues that plaintiffs failed to alleged a "plausible causal relationship between the alleged mail and wire fraud and their use of All Star's services." *Id.*

However, in making this argument, defendant fails to provide any case law that supports its assertions or puts the Court's holding in doubt. Instead, defendant points only to allegations in the Complaint as evidence that "there are substantial grounds for a difference of opinion as to whether the complaint sufficiently alleges causation." ECF 22-1 at 12. In doing so, defendant demonstrates that it disagrees with the Court's application of law to the facts alleged in the Complaint. But, without any supporting case law, defendant's disagreement with the Court's analysis is plainly insufficient to establish substantial grounds for a difference of opinion. *Goodman*, 195 F. Supp. 3d at 774 ("An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue") (internal citation omitted).

The Court is also unpersuaded that these issues constitute controlling questions of law. In *Agape Senior Cmty, Inc.*, 848 F.3d 330, for example, the Fourth Circuit determined that whether the Attorney General has "absolute veto power over voluntary settlements" in qui tam actions under the False Claims Act was "a pure question of law."  *Id.* at 340.  In contrast, whether

statistical sampling is a permissible means of proving the plaintiffs' claims "based on the particular facts and evidence in this case" is not a pure question of law. *Id.* at 341. To the contrary, to ascertain whether plaintiffs have adequately alleged a RICO enterprise and proximate causation would require the Fourth Circuit to "delve beyond the surface of the record in order to determine the facts" of the case and would amount to asking the Fourth Circuit to consider "whether the district court properly applied settled law" to those facts. *Agape Senior Cmty, Inc.*, 848 F.3d at 341; *see also IRAP*, 404 F. Supp. 3d at 951 (finding the same).

In sum, defendant's disagreement with the Court's ruling is not enough to find a controlling question of law or a substantial difference of opinion as to either of defendant's RICO-related questions. *IRAP*, 404 F. Supp. 3d at 951 ("a party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds"); *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam) ("The legislative history of subsection (b) of section 1292 ... indicates that…it was not intended merely to provide review of difficult rulings in hard cases.").

### III. CONCLUSION

For the reasons set forth above, I shall deny defendant's Motion.  An Order follows.


Date: January 13, 2021                           _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge